Filed 7/17/14  Robertson v. Robertson CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| **DAVID ROBERTSON,**<br><br>      **Plaintiff and Respondent,**<br><br>**v.**<br><br>**WILLIAM ROBERTSON et al.,**<br><br>      **Defendants and Appellants.** | **B246472**<br><br>**(Los Angeles County<br>Super. Ct. No. VC057513)** |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Patrick T. Meyers, Judge.  Affirmed.

Stanley D. Bowman for Defendants and Appellants.

John Frank Davis for Plaintiff and Respondent.

\* \* \* \* \* \* \* \*

Following a bench trial, the trial court entered judgment in favor of plaintiff and respondent David Robertson (David) and against defendants and appellants William Robertson (William) and Stanley Bowman (Bowman) (sometimes collectively appellants).[1] David had filed a complaint against appellants after William, who was the executor of their mother's estate and represented by attorney Bowman, personally acquired the estate's primary asset without David's knowledge. Following a bench trial, the trial court ruled that William breached his fiduciary duty and converted funds derived from the asset, and Bowman acted below the standard of care. It awarded damages totaling $723,139.16 and imposed a constructive trust over property William purchased with funds generated from the sale of estate property.

We affirm. The trial court properly exercised its discretion to judicially notice records from related cases and, in any event, appellants were not prejudiced by the trial court's consideration of those records. Substantial evidence supported the trial court's findings on the causes of action for breach of fiduciary duty and conversion against William, and negligence against Bowman. Finally, the trial court properly determined that appellants' failure to comply with the statutory requirements for alleging the statute of limitations as a bar constituted a waiver of that affirmative defense.

## FACTUAL AND PROCEDURAL BACKGROUND

Nona Victoria Robertson (Nona) died testate in August 1995. Nona's sons and sole heirs were David and William. At the time of her death, she owned certain real property, including a residence located at 11356 Oklahoma Avenue in South Gate, California (South Gate property). William had lived with her at the South Gate property and contributed to the mortgage payments and property taxes. The mortgage was current at the time of Nona's death. According to her will, each of her sons was to inherit one-half of her estate (Estate), and William was to be the Estate's executor.

In November 1987, Nona had executed a deed of trust on the South Gate property. Before Nona died, William and David had a conversation in which David indicated he

---

[1]     We employ first names solely for clarity's sake, meaning no disrespect.

2

did not want William's personal household problems to affect his own household. After she died, William fell behind in the payments on the loan secured by the deed of trust; he was also a party to the loan. A notice of default and election to sell was recorded in August 1996, and at that time the amount of the unpaid obligation was approximately $55,500. William claimed he first received notice in January 1997 that the mortgage on the South Gate property was in arrears. A trustee's sale under a deed of trust was initially scheduled for February 1997. Seeking assistance to prevent foreclosure, William retained Bowman, who indicated that he was unsuccessful in his efforts to help William obtain a loan to pay off the arrearage. At Bowman's direction, in June 1997, for the purpose of preventing the trustee's sale from going forward, William filed for bankruptcy protection under chapter 13 of the Bankruptcy Code; the trustee's sale was taken off calendar due to the bankruptcy. Though the bankruptcy initially operated to stay the trustee's sale, the plan under chapter 13 was not confirmed, and William voluntarily converted to a chapter 7 bankruptcy.

In July 1997, on William's behalf Bowman filed a petition for probate of Nona's will and for letters of administration (Probate action). William requested that the will be admitted into probate, that he be appointed executor of the Estate, that he be granted full authority under the Independent Administration of Estates Act (IAEA) and that no bond be required. Following a November 1997 hearing, the probate court appointed William as the executor of the Estate, subject to the requirement that a surety bond in the amount of $172,000—the value of the assets identified in the Estate—be posted. William thereafter posted the bond and the probate court issued letters testamentary that the will had been proven, and it fully authorized William to act as the Estate's executor under the IAEA.

Having received a copy of the Probate action petition, in early April 1998, David filed and served a special notice that described him as a person interested in the Probate action and requested that he receive special notice of matters in the Probate action. The special notice provided his home address where he had resided for 40 years. Thereafter, no activity occurred in the Probate action for approximately 12 years, including that no

3

notice was provided to David concerning the South Gate property or any other aspect of the Probate action.

William's bankruptcy was discharged in March 1998. According to William, he attempted to refinance the loan on the South Gate property but was unable to do so while in bankruptcy. On April 13, 1998, Diego Cobo acquired the South Gate property at a foreclosure sale for a purchase price of $107,625. At that time, $63,347.64 remained owing against the South Gate property. Under typical circumstances, the approximate $44,000 over the amount owing would be returned to the foreclosed property's owner.

After William was appointed executor, neither he nor Bowman took any steps to obtain financial assistance to prevent the foreclosure even though William knew the amount owing was approximately $60,000 and knew the South Gate property was worth more than that; they never contacted David or sought financial help from him, nor did they contact the lender. Had David known that the South Gate property was facing foreclosure because of a $60,000 unpaid debt, he would have purchased the home or made some type of arrangement with William to get the property out of foreclosure. But instead, in May 1998, William, in his capacity as the executor of the Estate and still represented by Bowman, commenced an action to quiet title and for declaratory relief against Cobo, Fairbanks Capital Corporation and Wes Pac Reconveyance, Inc. (Cobo action), seeking to set aside the foreclosure sale. William did not identify the Probate action as a related case. In the Cobo action, William also filed an ex parte application for a restraining order to preclude Cobo from filing an unlawful detainer action. Cobo and William later stipulated that a temporary restraining order could remain in effect so long as William paid rent in the amount of $1,000 per month.

The Cobo action parties engaged in mediation in March 1999 and a mandatory settlement conference in September 1999. A minute order entered following the settlement conference stated that the case settled. In exchange for William's payment of a 10 percent premium above what Cobo had paid for the property, Cobo conveyed the South Gate property to William in October 1999, and Bowman dismissed the Cobo action in January 2000. William borrowed approximately $10,000 from a friend and obtained a

4

loan in his own name to effect the settlement. Comparable sales of homes showed the South Gate property had a value somewhere between $180,000 and $200,000 at the time of the settlement. Bowman attributed the dismissal to his determination that the action had little merit and would be expensive to take to trial. William denied telling Bowman about the settlement and denied knowledge of the dismissal.

Though William was aware he had initiated the Cobo action on behalf of the Estate in his capacity as the executor, "at some later time" he negotiated the settlement with Cobo individually, on his own behalf. When William was negotiating with Cobo individually, it did not occur to him that he owed any duty to the Estate. The deed transferring the South Gate property was made out to "Bill Robertson, an unmarried man" and identified the transfer as a gift. William did not believe it was necessary to report to the court in the Probate action that he had lost the Estate's primary asset and acquired it in his own name. Though he denied there was a settlement of the Cobo action, Bowman acknowledged he was aware that William and Cobo had agreed between themselves for William's purchase of the South Gate property. Bowman did not believe the Estate had the capacity to tender a sufficient amount to obtain the property from Cobo.

In the meantime, in a January 1999 filing, Wes Pac indicated it held approximately $42,000 in surplus funds from the foreclosure of the South Gate property and had contacted William's attorney to inform him of the funds, and it expressed concern that the Estate could lose those proceeds in the course of litigation. Accordingly, it had filed an interpleader action (Wes Pac action) and served all claimants, including the Internal Revenue Service which had removed the interpleader action to federal court. An order in that action, prepared by Bowman, directed payment of approximately $39,617.80 to William as the executor of the Estate. When William received the funds, he reported their receipt to Bowman and deposited them into his personal account. He thought the funds might have come from the sale of the South Gate property.

In October 2006, William purchased a residence located at 13881 Truman Avenue in Hesperia (Hesperia property). To finance the purchase, he borrowed $306,300 secured

5

by a deed of trust on the Hesperia property.  On November 2, 2007, William conveyed his interest in the South Gate property to himself and his wife Wanida Robertson, and on the same day they sold the South Gate property for $545,000 less existing encumbrances. William had made several improvements to the South Gate property before its sale. Using the funds obtained from that sale, William thereafter paid off the loan against the Hesperia property.

In July 2010, David moved in the Probate action to suspend William's powers and remove him as executor; he also filed a petition for probate of the will, for letters testamentary and for his appointment as a successor executor.  In August 2010, David and William stipulated to William's resignation as executor and to David's nomination as successor executor.  The probate court thereafter appointed David as the successor executor in the Probate action and waived bond.

### *The Instant Action.*

#### **Pleadings.**

David, in his capacity as executor of the Estate and individually, filed a complaint against appellants in November 2010, alleging claims for breach of fiduciary duty, conversion, unjust enrichment and constructive trust against William and negligence against Bowman.  On behalf of the Estate, he sought damages equal to the value of the real property plus reasonable rental income and one-half of that amount on his own behalf.  He also sought an accounting, imposition of a constructive trust and punitive damages.  William generally denied the allegations and raised four affirmative defenses, and Bowman demurred.  After the trial court overruled the demurrer, Bowman, too, generally denied the allegations.

#### **Trial.**

Trial commenced in March 2012.  The parties stipulated to a number of facts as well as to the admission of several exhibits.  David called as witnesses Bowman, certified appraiser Tyler Adams, William and probate attorney Michael Gertner  The trial court also took judicial notice of the records in the Cobo action.  Testifying as an expert on David's behalf, Gertner opined:  "It seems entirely inappropriate to file an action on

6

behalf of an executor and after the action is concluded to have the result passed to the benefit of an individual rather than the executor of the estate." He stated that, at a minimum, David should have received notice of the proposed transaction and be provided an opportunity to object or cure the default. He further opined that Bowman's conduct fell below the applicable standard of care for an attorney given that the Estate's property became that of the executor individually.

On the second day of trial, David moved for leave to file a first amended complaint to conform to proof, seeking to add a cause of action for negligence against William alleging that he negligently failed to protect the South Gate property from foreclosure while acting in his fiduciary capacity as the Estate's executor and to add a paragraph describing the same facts as an additional basis for his existing negligence cause of action against Bowman. William and Bowman opposed the motion. In an April 5, 2012 order, the trial court granted the motion, finding the additional allegations were based on the facts already alleged and did not raise any new or substantially different issue. Without seeking leave of court, William answered the first amended complaint, adding several affirmative defenses to his general denial, and the trial court later struck the answer.

### Statement of Decision.

Following its receipt of written closing arguments, the trial court filed an 80-page statement of decision in October 2012.[2] It based its findings in large part on the relative credibility of the witnesses and exhibits, explaining "[c]redibility determinations with respect to witness testimony and related documentary evidence have a significant bearing on the resolution by the trier of fact of the issues raised by the parties' respective pleadings."

---

[2] Appellants filed objections to a proposed statement of decision, and although they designated those objections as part of the record on appeal, they were not made a part of the clerk's transcript. Only the trial court's minute order overruling those objections appears in the record. An appellant bears the burden of providing an adequate record to support the claims on appeal. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296; *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.)

In connection with the first cause of action for breach of fiduciary duty against William, the trial court ruled: "The weight of the evidence has compellingly showed that [William]'s alleged capacity as executor of their mother's estate was essentially nothing but a pose. [William] plainly did not perform his fiduciary duties as executor of their mother's estate in any significant respect. Such denomination as executor of their mother's estate only served to cloak [William]'s self-dealing and other pursuits in his own self-interests." It found that William's failure to engage in any conduct meaningfully designed to prevent foreclosure, his failure to provide any notice to David and his personal acquisition of the Estate's most significant asset were among the actions establishing a breach of fiduciary duty and further showing that such breach was a substantial factor causing harm to the Estate and to David's interest therein. The trial court further ruled that clear and convincing evidence established William's conduct as the Estate executor was despicable and done with a knowing and willful disregard of both the Estate's and David's rights.

Summarizing William's conduct from the time of his mother's death to the sale of the South Gate property, the trial court further ruled David had established the elements of the second cause of action for conversion and the third cause of action for unjust enrichment. The trial court characterized the evidence as showing: "[William] vindicated solely his own fixated and self-dealing objectives of possessing, controlling and owning the subject property for himself alone and not for any purpose(s) professed in his pleading therein of acting on behalf of their mother's estate and in his capacity as executor of such estate. [Citation.] The evidence and reasonable inferences therefrom give rise to the compelling inference that [William] engaged in a continuum of conduct dedicated to achieving the foregoing objectives to the detriment of and damage to their mother's estate and to [David's] tangible interest as a beneficiary under their mother's will." It awarded damages in the amount of the South Gate property's sales price, less amounts owing, plus prejudgment interest; it specified, however, that the award was not in addition to any award under the first cause of action. The trial court further found that

8

the remedy of the imposition of a constructive trust over the Hesperia property was appropriate to the extent of the damages awarded under other causes of action.

Finally, the trial court ruled that David had satisfied his burden to show that Bowman was negligent as alleged in the sixth cause of action. It cited as some examples of Bowman's negligence his drafting an order in the name of the Estate that permitted the release of the interpleader funds to William personally, failing to report William's receipt of those funds to the probate court, failing to provide notice to David of the foreclosure and failing to take meaningful steps to help prevent foreclosure. It found that Bowman significantly enabled William's self-dealing to the detriment of the Estate. The trial court further found the evidence established that David "(along with the probate court) was not approached because [William] assisted by Bowman were engaged in the deliberate course of concealing their conduct from the plaintiff and the probate court. In the court's view, [David] has proved more likely true than not true that the loss of the subject property from their mother's estate was caused by Bowman's legal negligence in failing to obtain readily available financial and other assistance from [David] on behalf of the estate and of [David's] interests as a beneficiary. Such recourse to [David's] financial abilities and resources constituted the 'more favorable result' that would have saved or bailed out the subject property but for Bowman's negligence. [Citation.]"

As to the first through fourth and sixth causes of action, the trial court rejected appellants' claim that the applicable statutes of limitations operated as a bar. It ruled appellants waived the defense by failing to plead it in accordance with Code of Civil Procedure section 458. In any event, it further determined that David's claims did not accrue until November 2007 when William sold the South Gate property to a third party and took the proceeds for himself. The November 2010 complaint was therefore filed within both the four-year limitations period for breach of fiduciary duty provided by Code of Civil Procedure section 343 and the three-year limitations period for conversion and constructive trust provided by Code of Civil Procedure section 338, subdivision (c)(1). But it ruled the newly-added fifth cause of action for negligence was barred by the two-year limitations period in Code of Civil Procedure section 335.1, and granted

9

William's motion for judgment under Code of Civil Procedure section 631.8 on that claim.

### Judgment and Appeal.

In November 2012, the trial court entered judgment for David, on behalf of the Estate, ordering that he recover $723,139.16 ($481,652.36 in economic damages plus $241,486.80 in prejudgment interest) from William on the first cause of action for breach of fiduciary duty, $706,623.17 ($470,652.17 in economic damages plus $235,970.81 in prejudgment interest) on the second cause of action for conversion, the same amounts on the third cause of action for unjust enrichment, and nothing on the fifth cause of action for negligence; it imposed a constructive trust against the Hesperia property under the fourth cause of action. It further awarded David $18,500 in punitive damages against William. As to Bowman, it awarded David damages in the of $470,652.36 on the sixth cause of action for negligence, specifying that such recovery was encompassed within the damages imposed against William, and therefore William and Bowman were jointly and severally liable for such amount.

Appellants appealed from the judgment.

### DISCUSSION

Appellants raise several related challenges to the judgment, including that the trial court erroneously relied on documents filed in other actions that were not admitted as exhibits at trial, substantial evidence did not support any of the trial court's findings and the statute of limitations barred David's claims. We find each challenge lacks merit.

## I.     The Trial Court's Consideration of Records in Related Cases Affords No Basis for Reversal.

A court may take judicial notice of the records of any court of this state. (Evid. Code, § 452, subd. (d)(1).) In its statement of decision, the trial court stated that it took judicial notice, sua sponte, of the records in the Wes Pac action and it referenced several pleadings and orders filed in the Probate action and the Cobo action that were not otherwise exhibits at trial or the subject of a judicial notice request. Appellants assert the trial court failed to comply with Evidence Code section 455, which requires the court to

10

provide the parties an opportunity to be heard when it proposes to take judicial notice of a mater "that is of substantial consequence to the determination of that action."**3** (See *Estate of Russell* (1971) 17 Cal.App.3d 758, 765 [trial court took notice of documents in court records on own motion without affording "the party adversely affected, an opportunity to present information as to the propriety of taking judicial notice either before the cause was submitted for decision or upon a reopening of the case for such purpose"].) We review the trial court's determination to take judicial notice for an abuse of discretion. (E.g., *Fontenot v. Well Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 264; *In re Social Services Payment Cases* (2008) 166 Cal.App.4th 1249, 1271.)

As a threshold matter, nothing in the record establishes that appellants objected to the statement of decision on this ground below. Accordingly, appellants have forfeited any claim of error concerning the propriety of the trial court's taking judicial notice of court records in the statement of decision. (E.g., *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1132 [a party who fails to object or assert a claimed deficiency to a statement of decision in the trial court waives the right to assert error on appeal]; *Akins v. State of California* (1998) 61 Cal.App.4th 1, 41, fn. 36 [same]; accord, *Children's Hospital & Medical Center v. Bonta* (2002) 97 Cal.App.4th 740, 776 ["'An appellate court will not consider procedural defects or erroneous rulings where an objection could have been, but was not, raised in the court below'"].)

Nevertheless, even if we were to consider appellants' claim on the merits, we would find no abuse of discretion. On its face, Evidence Code section 455 applies only to matters that are of "substantial consequence" to the trial court's determination of the

---

**3** In relevant part, Evidence Code section 455 provides: "With respect to any matter specified in Section 452 . . . that is of substantial consequence to the determination of the action: [¶] (a) If the trial court has been requested to take or has taken or proposes to take judicial notice of such matter, the court shall afford each party reasonable opportunity, before the jury is instructed or before the cause is submitted for decision by the court, to present to the court information relevant to (1) the propriety of taking judicial notice of the matter and (2) the tenor of the matter to be noticed."

action. Here, none of the challenged records was of substantial consequence to the trial court's findings and, therefore, compliance with Evidence Code section 455 was not required. (See *Carroll v. State of California* (1990) 217 Cal.App.3d 134, 144 [finding compliance with Evid. Code, § 455 unnecessary where material noticed is not of substantial consequence to the determination of the action].) In the statement of decision, the trial court cited many of the challenged records only by way of background and did not rely on them to support its findings. Those records included David's request to remove William as executor of the Estate, the stipulation that resulted from that request, trial court minute orders following David's appointment as executor, and pleadings and orders concerning William's nonappearance in the Probate action. Other records were not of substantial consequence because the matters therein were equally established by witness testimony or admitted exhibits, including David's request for notice in the Probate action, the complaint and answer in the Cobo action, pleadings filed by Wes Pac in the Cobo action concerning the existence of the Wes Pac action, the mediation and settlement conference in the Cobo action, the absence of any records in the Cobo action showing it was related to the Probate action and the order releasing funds to William in the Wes Pac action. Though there was no other evidence establishing that Bowman had prepared the order for the release of funds in the Wes Pac action, other evidence— including Bowman's own testimony—established his negligence with respect to that payment.

Finally, "[t]he burden is on the appellant in every case affirmatively to show error and to show further that the error is prejudicial . . . ." (*Vaughn v. Jonas* (1948) 31 Cal.2d 586, 601.) For the same reasons that Evidence Code section 455 was inapplicable, any error in judicially noticing the challenged records was not prejudicial, as it is not reasonably probable the trial court would have reached a different decision without the noticed materials. (See *Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 527; *Rieger v. Arnold* (2002) 104 Cal.App.4th 451, 467-468; *West Valley-Mission Community College Dist. v. Concepcion* (1993) 16 Cal.App.4th 1766, 1778.)

## II.    Substantial Evidence Supported the Trial Court's Findings.

### A.    *Standard of Review.*

David's claims for breach of fiduciary duty, conversion and negligence presented questions of fact for the trial court to resolve.  (See *Antower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1599 [breach of fiduciary duty]; *Lindstrom v. Hertz Corp.* (2000) 81 Cal.App.4th 644, 652 [negligence]; *Myers v. Stephens* (1965) 233 Cal.App.2d 104, 119-120 [conversion].)  In addressing those questions, the trial court expressly relied on its own credibility determinations with respect to witness testimony and documentary evidence.

Thus, we are governed by the standard of review summarized in *Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 765:  "'In general, in reviewing a judgment based upon a statement of decision following a bench trial, "any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision.  [Citations.]"  [Citation.]  In a substantial evidence challenge to a judgment, the appellate court will "consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings].  [Citations.]"  [Citation.]  We may not reweigh the evidence and are bound by the trial court's credibility determinations.  [Citations.]  Moreover, findings of fact are liberally construed to support the judgment.  [Citation.]'"  (Accord, *Citizens Business Bank v. Gevorgian* (2013) 218 Cal.App.4th 602, 613; *Estate of Young* (2008) 160 Cal.App.4th 62, 75-76.)

Appellants bear the burden of demonstrating that the record does not contain sufficient evidence to sustain the challenged findings of fact.  (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881; *Boeken v. Phillip Morris Inc.* (2005) 127 Cal.App.4th 1640, 1658.)

### B.    *Breach of Fiduciary Duty.*

"An executor '"is an officer of the court and occupies a fiduciary relation toward all parties having an interest in the estate."'  [Citations.]  '"Executors occupy trust relations toward the legatees, and are bound to the utmost good faith in their transactions

13

with the beneficiary. . . .'"" [Citations.] An executor also bears a 'duty to disclose all the facts . . . and to refrain from taking an unfair advantage of [the legatees].' [Citation.]" (*Estate of Sanders* (1985) 40 Cal.3d 607, 616.) More specifically, it is the executor's duty "to collect estate assets and preserve them until distribution, to pay claims against the estate including taxes and the charges of administration, and to distribute the residue to those entitled. He is accountable for all of the decedent's estate that comes into his possession and is chargeable with the losses resulting from his default or neglect." (*Estate of Gerber* (1977) 73 Cal.App.3d 96, 109.) "The standard of care generally applicable to executors is 'that degree of prudence and diligence which a man of ordinary judgment would be expected to bestow upon his own affairs of a like nature.' [Citations.]" (*Estate of Beach* (1975) 15 Cal.3d 623, 631.) Probate Code section 9600[4] codified the standard set forth in *Estate of Beach.* (*Estate of Davis* (1990) 219 Cal.App.3d 663, 672, fn. 17.)

"A primary duty of the executor is to take reasonable steps to preserve the assets of the estate. [Citations.]" (*Estate of Beach, supra,* 15 Cal.3d at p. 639.) Following a detailed recitation of the evidence adduced at trial, the trial court ruled that William "did not make any meaningful effort to preserve and protect their mother's estate, especially as to the subject property." The trial court explained that the mortgage payments on the South Gate property were current at the time of Nona's death, "and the loan delinquency that eventually developed was not comprehensibly attributable to anything or anyone but [William's] evident inattention and/or indifference to such development." It found William's testimony concerning his financial straits after Nona's death to be "so strained, sketchy and otherwise lacking in specificity" that it was not credible and failed to amount

---

**4** Probate Code section 9600 provides: "(a) The personal representative has the management and control of the estate and, in managing and controlling the estate, shall use ordinary care and diligence. What constitutes ordinary care and diligence is determined by all the circumstances of the particular estate. [¶] (b) The personal representative: [¶] (1) Shall exercise a power to the extent that ordinary care and diligence require that the power be exercised. [¶] (2) Shall not exercise a power to the extent that ordinary care and diligence require that the power not be exercised."

14

to an excuse for his dereliction in duty. It concluded that William's "efforts, if any, as the purported executor to preserve and protect the subject property as part of their mother's estate were faint, fleeting and markedly unsupported by any corroborating documentary evidence, except as to the significant failure of such effort(s)."

The trial court contrasted William's lack of effort to preserve the South Gate property with his affirmative efforts to prevent David's intervention in the probate court so that William could obtain sole ownership and legal title to the property. It determined the evidence showed that William exploited his status as the Estate's executor in connection with his bankruptcy, in the probate court and in state court "to brush over the illegitimate means and ends used by him in maintaining possession, control and eventual ownership of the subject property with a patina of purported legitimacy." The trial court found that William's failure to seek approval for any of his actions served to effect his concealment. It further credited David's testimony that he was unaware of William's actions and discredited Bowman's testimony that he sent a letter to David notifying him of the foreclosure.

Summarizing, the trial court ruled: "The court finds that [David] as executor of their mother's estate has proved more likely true than not that [William] was the appointed executor of their mother's estate; that, as such, he owed fiduciary duties of reasonable care and undivided loyalty within the meaning of Probate Code 9600 and its decisional progeny to their mother's estate and the beneficiaries thereunder, including [David]; that he failed to act as a reasonably careful executor would have acted under the same or similar circumstances, as well as knowingly acted against the interest of their mother's estate and the beneficial interest of [David]; that neither their mother's estate nor [David] gave informed consent to [William]'s conduct; that their mother's estate and [David]'s interest therein as a beneficiary were harmed; that [William]'s conduct was a substantial factor in causing such harm to their mother's estate and [David]'s interest therein as a beneficiary; and that the estate and/or [David] as executor of their mother's estate has sustained economic damage."

15

In their challenge to these findings, appellants miss the point. They argue that once Cobo purchased the South Gate property through a nonjudicial foreclosure sale, the Estate no longer had any interest in the property, and correspondingly, William owed no duties as the Estate's executor vis-à-vis the property. (See *Nguyen v. Calhoun* (2003) 105 CalApp.4th 428, 440 ["'A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender'"].) They ignore that the trial court concluded William breached his duty by facilitating the foreclosure of the South Gate property, the Estate's primary asset. In great detail, the trial court described William's testimony that there was no issue relative to the mortgage payments at the time of Nona's death. Thereafter, though William indicated he was "okay financially" at that time, he attributed his falling behind in the mortgage payments to "a lack of work," responding "yeah, you could say that" in answer to the question whether his workload declined after Nona's death. Less than one and one-half years later, William owed approximately $60,000 on the South Gate property. The trial court found significant that William's testimony he tried to make partial payments and tried to refinance the property was unsupported by any credible evidence. It found equally significant that William knew the property was worth more than $60,000, yet never entertained the idea of selling it or contacting anyone, including David, to assist in remedying the default. Substantial evidence supported the trial court's determination that William failed to use reasonable care to preserve the South Gate property for the benefit of the Estate.

Even if we were to evaluate William's conduct post-foreclosure—as appellants suggest—we would conclude substantial evidence showed William breached his fiduciary duty by settling the Cobo action for personal gain. As explained in *In re Estate of Martin* (1999) 72 Cal.App.4th 1438, 1443: Probate Code "[s]ection 9880 provides that '[e]xcept as provided in this chapter,' an executor may neither '(a) Purchase any property of the estate . . ., directly or indirectly,' nor '(b) Be interested in any such purchase.' This statute is a codification of the principle that executors may not deal with themselves, or

16

place themselves in a position antagonistic to the estate's beneficiaries. [Citation.]"[5] After Cobo purchased the South Gate property through a nonjudicial foreclosure sale, William brought an action against him in his capacity as the executor of the Estate. The trial court found significant the inconsistencies in William's testimony concerning the capacity in which he settled the Cobo action, initially stating that he understood he was acting as the executor of the Estate but then later testifying that he was acting solely in his individual capacity. William answered affirmatively in response to the question "you arrived in court with Mr. Bowman for court proceedings knowing you were the plaintiff and the executor of your mother's estate, but at some later time that day you believed that you were negotiating with Mr. Cobo on your own behalf, not as the executor of the estate?" He added it did not occur to him he would have some duty to the Estate at that point. Contrary to appellants' position, William's self-dealing in connection with his acquisition of the South Gate property from Cobo constitutes an independent basis for concluding he breached his fiduciary duty. (See *In re Estate of Martin, supra*, 72 Cal.App.4th at p. 1444 [executor breached fiduciary duty where she facilitated sale of shares owned by estate to a corporation in which she was an officer or director].)

### C. Conversion.

"'A cause of action for conversion requires allegations of plaintiff's ownership or right to possession of property; defendant's wrongful act toward or disposition of the property, interfering with plaintiff's possession; and damage to plaintiff. [Citation.]'" (*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384, 395 (*PCO*).) Money may be the subject of conversion where a specific, identifiable sum is involved. (*Ibid.*; see also *Certified Grocers of California, Ltd. v. San Gabriel Valley Bank* (1983) 150 Cal.App.3d 281, 289 ["the alleged conversion of money constitutes a tort"].)

---

[5] The Probate Code permits an executor to petition the probate court for the approval of an estate property purchase, but the undisputed evidence established that William never sought approval for any of his actions. (*See Estate of Martin, supra,* 72 Cal.App.4th at pp. 1443-1444.)

17

The trial court concluded that the evidence satisfied the elements of conversion: David had the right to own or possess his interest the South Gate property on behalf of the Estate as the successor executor under Nona's will; William's conduct exposed the property to foreclosure, and his ultimate disposition of the South Gate property interfered with David's interest in the property; and David suffered damages from the loss of his interest in the property. Accordingly, the trial court found "that [David] has proved more likely true than not true that [he as] successor executor to their mother's estate had a right to control and have the amount of $545,000.00 derived from the sale of the subject property by [William], the predecessor executor, on or about November 2007, less amounts owing against the subject property and approximately $10,000 paid by [William]; that [William] intentionally and substantially interfered with the control of [David] as successor executor of their mother's estate and with such executor's right on behalf of such estate did not consent; that [David] as successor executor of such estate was harmed; and that [William]'s conduct was a substantial factor in causing harm to the plaintiff as successor executor of such estate, including damages in the amount of $470,652.36."[6]

Appellants renew their specious argument that evidence showing the Estate no longer owned the South Gate property after the nonjudicial foreclosure sale somehow obviated any claim of conversion. Again, William's conduct in failing to preserve the Estate asset and permitting it to fall into foreclosure was just one in a series of events forming the conversion element of "a wrongful act or disposition of property rights . . . ." (*Oakdale Village Group v. Fong* (1996) 43 Cal.App.4th 539, 543.) The trial court found that William's exposing the property to foreclosure was the first step in "a continuum of conduct" that culminated in the sale of the South Gate property for $545,000, a sum that

---

**6**     We note that the trial court expressly determined that funds derived from the sale of the South Gate property—not the property itself—was the subject of conversion. (See *Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1295 [tort of conversion applies to personal property not real property].)

18

should have been under the control of the Estate.  Substantial evidence supported the trial court's conversion finding.

### D.    *Negligence.*

The elements of a legal malpractice claim are:  "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence."  (*Budd v. Nixen* (1971) 6 Cal.3d 195, 200, superseded by statute on another point as stated in *Laird v. Blacker* (1992) 2 Cal.4th 606, 615.)  The trial court found that David established each requisite element of his cause of action for professional negligence against Bowman, and substantial evidence supported those findings.

#### 1.    **Duty.**

With respect to the first element of duty, the trial court relied on the California Supreme Court's pronouncement in *Borissoff v. Taylor & Faust* (2004) 33 Cal.4th 523, 534, that an attorney retained by a predecessor fiduciary owes a duty to a successor fiduciary.  The court explained "the successor fiduciary must have standing to sue the predecessor's attorney if there is to be an effective remedy for legal malpractice that harms estates and trusts administered by successor fiduciaries," noting that "the successor fiduciary's power to sue for malpractice is no different than the successor's power to sue for nonperformance a person hired by the predecessor to fix the roof of a house belonging to the estate."  (*Borissoff v. Taylor & Faust, supra*, 33 Cal.4th at pp. 530, 531.)  Holding that the successor administrator of an estate would be permitted to sue tax counsel retained by the predecessor fiduciary to perform work for the estate, the court concluded: "To permit a successor fiduciary to sue an attorney hired by a predecessor to perform legal work for the benefit of the estate, when the attorney's negligent work has harmed the estate, creates no conflict of interest.  With respect to matters of estate administration, the predecessor and successor fiduciaries' interests are identical:  Both have the power

19

and duty to obtain competent legal representation for the purpose of fairly reporting the estate's tax liability." (*Id*. at p. 534.)

On the basis of this authority, the trial court concluded that Bowman's duty ran to the Estate and that David, as the successor executor of the Estate, had standing to assert a breach of duty. For this reason, appellants' citation to *Goldberg v. Frye* (1990) 217 Cal.App.3d 1258, 1267 is inapposite, as there the court explained the general principle that an attorney for the administrator of the estate does not owe a duty to the beneficiary. David alleged that Bowman's duty was to the Estate, not to him individually as a beneficiary. In any event, duty to a beneficiary may be established where, as here, the attorney's professional negligence frustrates the testamentary intent in a legal instrument, and the "beneficiaries clearly designated by the testator lose their legacy as a direct result of such negligence." (*Ventura County Humane Society v. Holloway* (1974) 40 Cal.App.3d 897, 903, italics omitted.)

### 2. Breach.

Second, the evidence showed that Bowman breached his duty through multiple acts and omissions. Examples of Bowman's breaches included his failure to make a meaningful effort to assist William in obtaining a loan to prevent foreclosure once the bankruptcy was discharged; his failure to contact David either to provide him with notice of the pending foreclosure—even after David had filed a request for such notice—or to seek his assistance in preserving the South Gate property for the Estate; his failure to complete or do anything in the Probate action after November 1997; his permitting William to settle the Cobo action by receiving a benefit for himself personally when Bowman had filed the action on behalf of the Estate; his dismissing the Cobo action while ostensibly claiming he was unaware of the terms of the settlement but admitting he was aware of William's purchase; his failure to set aside the $40,000 received from the foreclosure for the benefit of the Estate; and his failure to report his fees to the probate court. The trial court determined this evidence showed: "Bowman ignored or otherwise refused to acknowledge the manifest conflict between [William]'s grasping, overreaching self-dealing as an individual and his significant fiduciary responsibilities to their mother's

20

estate and to the plaintiff's interests as a beneficiary thereunder. Bowman's legal services were principally devoted to the largely self-dealing dimension of [William]'s purported performance as executor of their mother's estate."

Appellants argue the trial court ignored evidence showing that Bowman satisfied the applicable duty of care and performed adequate legal services on behalf of the Estate, including that he attempted to help William get a loan to refinance the South Gate property, he filed William's bankruptcy action to stop the foreclosure and he initiated the action against Cobo after the foreclosure sale. But their argument relies exclusively on evidence favorable to their position. It is well settled that "'[a]n appellant asserting lack of substantial evidence must fairly state all the evidence, not just the evidence favorable to the appellant. [Citation.] "[A]n appellant who challenges a factual determination in the trial court—a jury verdict, or a finding by the judge in a nonjury trial—must marshal *all* of the record evidence relevant to the point in question and affirmatively demonstrate its insufficiency to sustain the challenged finding." [Citations.]'" (*Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 415-416; see also *McCauley v. Howard Jarvis Taxpayers Assn.* (1998) 68 Cal.App.4th 1255, 1266 ["If one is going to make a 'the-facts-compel-that-I-win-as-a-matter-of-law' argument, one's brief must fairly state all the evidence"].)

Moreover, the trial court considered Bowman's explanations about his conduct and expressly found his testimony not credible. With detailed citations to the reporter's transcript, the trial court explained: "Bowman's relatively lengthy testimony afforded ample opportunity for the court to evaluate his credibility as a party witness. The court has concluded that he has been an unreliable historian as to events in which he significantly participated in the instant case. [Citations.] As arbiter of the credibility of the witness, the court finds that Bowman's testimony was significantly lacking in credibility, particularly with respect to his testimony that he sent any notice to [David] that the subject property 'was foreclosed on.' [Citations.] Bowman's facile response to the inquiry as to his reason for purportedly sending such a notice to [David] was, 'Just, I don't know, just sending out notices to people as to . . . what property the estate no longer

21

owned.' [Citation.] Bowman 'just' inexplicably and improperly did not send any such notices to the probate court, nor to [David.] [Citation.]" In connection with appellants' specific assertion that the evidence showed Bowman assisted William in trying to refinance the property, the trial court found otherwise, explaining that "[f]or a trial in which little, if any, corroborating documentary evidence was collectively proffered by the defendants, the absolute absence of even a scintilla of any evidentiary foundation, testimonial or documentary, to support the foregoing line of questioning of Bowman by [William]'s attorney [regarding attempts to obtain a loan] [citation] was extraordinary." "'Credibility is an issue for the fact finder'" and "'we do not reweigh evidence or reassess the credibility of witnesses. [Citation.]'" (*Cowan v. Krayzman* (2011) 196 Cal.App.4th 907, 915.) Even when the evidence gives rise to conflicting reasonable inferences, the inference that supports the trial court's finding is conclusive on appeal. (*Ibid*.)

Lastly, appellants argue that David failed to meet his burden of proof because there was insufficient expert testimony establishing Bowman's breach of the standard of care. As a threshold matter, we note that expert testimony is not required in all instances. "While California law holds that expert testimony is admissible to establish the standard of care applicable to a lawyer in the performance of an engagement and whether he has performed to the standard [citation], it by no means clearly establishes the parameters of the necessity of expert testimony to the plaintiff's burden of proof." (*Wright v. Williams* (1975) 47 Cal.App.3d 802, 810.) Thus, expert testimony is not required where "the failure of attorney performance [is] so clear that a trier of fact may find professional negligence unaided by the testimony of experts." (*Ibid*.) In any event, we need not determine whether Bowman's professional negligence was so clear because probate and tax attorney Gertner testified that Bowman acted below the standard of care when he permitted his client William to acquire the South Gate property as part of the Cobo action's settlement, stating: "It sounds like more of a shell game when you're seeking recovery on behalf of an estate and when the dust settles the property finds its way into the hands of the executor individually." He also opined it was below the standard of care

22

for Bowman to not report the acquisition to the probate court and to fail to receive approval for the payment of his fees. In response to a question as to whether his opinion would change if he knew the Estate had no funds to purchase the South Gate property, Gertner further opined that because of the clear equity in the property it should not have been lost in the first place. Finally, Gertner opined that, at a minimum, Bowman should have sought permission from the probate court for William's acquisition, which in turn would have enabled David to receive notice of the proposed transaction.

### 3. Causation and damages.

"To prevail in a legal malpractice action, '[s]imply showing the attorney erred is not enough.' [Citation.] The plaintiff must also establish that but for the alleged malpractice trial or settlement of the underlying lawsuit would have resulted in a better outcome. [Citations.]" (*Filbin v. Fitzgerald* (2012) 211 Cal.App.4th 154, 166.) Courts have acknowledged that "[d]etermining causation always requires evaluation of hypothetical situations concerning what might have happened, but did not. In both litigation and transactional malpractice cases, the crucial causation inquiry is *what would have happened* if the defendant attorney had not been negligent. This is so because the very idea of causation necessarily involves comparing historical events to a hypothetical alternative." (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1242.)

Here, the trial court determined that Bowman assisted William in his deliberate course of conduct in concealing his self-dealing from both the probate court and David, and this goal of concealment was the reason David was never approached to provide assistance in keeping the South Gate property out of foreclosure. It further found that David established the loss of the property was caused by Bowman's legal negligence in failing to obtain readily available assistance from David, and that recourse to David's financial abilities and other resources would have yielded a more favorable result. Noting that David held a master's degree in business administration, had significant management level business experience and had lived in the same home for over 40 years, the trial court summarized his testimony relevant to his preservation of the South Gate property: "The plaintiff was asked by his attorney, as follows: [¶] 'If your brother had

23

contacted you in 1998 and explained to you that there was approximately $60,000 owed on the house, the house faced foreclosure and had a value in excess of a hundred thousand dollars, would you have been in a financial position to take care of that debt?' [¶] [David] answered, 'Absolutely.' Then asked if he would have taken care of that debt, [David] again answered, 'Absolutely.' [David] testified that, 'with that kind of equity,' he would have bought the subject property, negotiated the balance with [William] and then either rented the subject property out or sold the house, sooner or later, depending on when its property value went up."

Though appellants characterize David's testimony about his willingness and ability to preserve the South Gate property for the Estate as self-serving and speculative, the trial court found otherwise. We recognize that the plaintiff's burden to show causation and damages in a legal malpractice action is significant: "The mere probability that a certain event would have happened will not furnish the foundation for malpractice damages. '"Damages to be subject to a proper award must be such as follows the act complained of as a *legal certainty.*"' [Citations.]" (*Barnard v. Langer* (2003) 109 Cal.App.4th 1453, 1461-1462.) Here, the evidence established that David was in a position and would have acted to prevent the South Gate property from falling into foreclosure, yet he received no information about the Probate action despite having filed a special notice that obligated Bowman to provide him with notice of the proceedings. We agree with the trial court that this evidence satisfied David's burden to show more than a mere probability that the Estate would have been able to preserve the property but for Bowman's negligence. (Compare *id.* at p. 1462 [evidence insufficient to show that but for law firm's negligence lawsuit would have settled for more or received a more favorable recovery had the matter gone to trial where the plaintiff offered no evidence to show the underlying defendant would have offered a larger settlement or a trier of fact would have awarded more than the settlement amount].)

We likewise reject appellants' argument that the trial court erred in awarding $470,652.36 in damages against Bowman—the same amount it awarded against William for conversion. The amount of damages is a question of fact and will not be disturbed if it

24

is supported by substantial evidence. (*Westphal v. Wal-Mart Stores, Inc.* (1998) 68 Cal.App.4th 1071, 1078.) The evidence is insufficient to support a damage award only when no reasonable interpretation of the record would support the amount awarded. (*San Diego Metropolitan Transit Development Bd. v. Cushman* (1997) 53 Cal.App.4th 918, 931.) Generally, "an attorney's 'liability, as in other negligence cases, is for all damages directly and proximately caused by his negligence.' [Citation.]" (*Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 980.) Substantial evidence supported the trial court's determination that the Estate's loss of the value of the South Gate property was an appropriate measure of damages, as the loss was proximately caused by Bowman's negligence.

### 4.	Leave to amend.

We find no merit to Bowman's argument that the trial court's permitting David leave to file an amended complaint prejudiced him by changing the focus of the proceedings. The amended pleading added an allegation to the cause of action for negligence against Bowman that he owed a duty "to competently instruct defendant [William] to care for and protect the assets of the estate," and one paragraph concerning Bowman's negligent failure "to take steps to protect and preserve estate property."[7] In granting the motion for leave to amend, the trial court ruled: "[David]'s further articulation of already alleged bases for defendant Bowman's alleged legal negligence fall well within the scope of the various allegations in the original complaint with respect to said defendant having failed to prosecute the probate of the estate of No[n]a Robertson diligently and faithfully. The court is unconvinced by defendant Bowman's arguments to the contrary and by his protests of having been surprised and 'sand-bagged' by [David]'s motion. The court finds no unfair and/or significant prejudice impacting defendant Bowman within the meaning of the foregoing statutory and decisional law in granting [David]'s motion for leave to file his first amended complaint."

---

[7]	The trial court also permitted David leave to amend to allege an additional cause of action against William, but ultimately concluded the statute of limitations barred the claim.

A trial court may allow a pleading to be amended at any time up to and including trial.  (Code Civ. Proc., §§ 473, subd. (a)(1), 576.)  "'The basic rule applicable to amendments to conform to proof is that the amended pleading must be based upon the same general set of facts as those upon which the cause of action or defense as originally pleaded was grounded.'"  (*Garcia v. Roberts* (2009) 173 Cal.App.4th 900, 910.)  The trial court has broad discretion to grant leave to amend, and ""'"[t]hus, even if the reviewing court might have ruled otherwise in the first instance, the trial court's order will yet not be reversed unless, as a matter of law, it is not supported by the record."'"'"  (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242.)  No abuse of discretion occurred here.

Here, as in *Honig v. Financial Corp. of America* (1992) 6 Cal.App.4th 960, 966, "[t]he proposed amendments finished telling the story begun in the original complaint.  The added assertions described the continuation of the events asserted in the initial pleading."  Indeed, the amended allegations related to Bowman's conduct in connection with the foreclosure of the South Gate property.  Given the stipulated facts included that Bowman represented William at the inception of the Probate action and during the time the South Gate property went into foreclosure, the trial court acted within its discretion to conclude the amendment caused no surprise or prejudice to Bowman.  (See *Higgins v. Del Faro* (1981) 123 Cal.App.3d 558, 565 [where an amendment provides "'merely the addition of matters essential to make the original cause of action complete' the amendment should certainly be allowed by the court.  [Citation.]  Such an amendment effects no change in the nature of the case, and can therefore cause no surprise or prejudice to the adverse party"].)

### E.    Statute of Limitations.

The trial court ruled the applicable statutes of limitations did not operate as to bar the claims for breach of fiduciary duty, conversion or negligence both because the defense was not properly pleaded and because those claims did not accrue until William disposed of the South Gate property.  We find no basis to disturb this conclusion.

The statute of limitations, which operates as an affirmative defense, prescribes the period beyond which a plaintiff may not bring a cause of action. (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806.) Once a cause of action accrues, the plaintiff must bring a claim within the limitations period. (Code Civ. Proc., § 312; *Fox v. Endo-Ethicon Surgery, Inc., supra,* 35 Cal.4th at p. 806.) The determination of the accrual of a cause of action is a question of fact. (*Fox v. Endo-Ethicon Surgery, Inc., supra,* at p. 810; *Bookout v. State ex rel. Dept. of Transportation* (2010) 186 Cal.App.4th 1478, 1484.) We defer to the trial court's factual findings if supported by substantial evidence. (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916.) Only if the facts are undisputed do we independently review the application of the statute of limitations as a matter of law. (*Internat. Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606, 611-612.)

The trial court properly determined that appellants' failure to plead adequately the statute of limitations as an affirmative defense operated as a waiver of that defense. In his answer, William asserted only "[t]he statute of limitations is a bar to any recovery," and Bowman asserted no affirmative defenses. As the content of the pleadings was undisputed, we conclude, as a matter of law, appellants' answers failed to comply with Code of Civil Procedure section 458, which requires a party pleading a statute of limitations defense to allege the specific statutory basis for the defense. (See *Brown v. World Church* (1969) 272 Cal.App.2d 684, 674 ["It is necessary for defendant who pleads the statute of limitations to specify the applicable section, and, if such section is divided into subdivisions, to specify the particular subdivision or subdivisions thereof"].) Code of Civil Procedure section 458 is strictly applied. (*Davenport v. Stratton* (1944) 24 Cal.2d 232, 247.) "The failure to properly plead the statute of limitations waives the defense." (*Martin v. Van Bergen* (2012) 209 Cal.App.4th 84, 91; accord, *Richard B. Levine, inc. v. Higashi* (2005) 131 Cal.App.4th 566, 573, fn. 4.) We find no merit to appellants' argument that David's affirmative allegation in his complaint that the statute of limitations did not operate as a bar was sufficient to satisfy their statutory burden.

Nor do we find any merit to appellants' argument that they satisfied their pleading burden by filing an amended answer in which they alleged their statute of limitations affirmative defense with specificity.  The trial court granted David's motion to strike the amended answer on the ground it was filed improperly without leave of court.  (See Cal. Rules of Court, rule 3.1324.)  Appellants have not separately challenged that ruling, and we therefore rely only on the allegations in the original answers.  (See, e.g., *Fritelli, Inc. v. 350 North Canon Drive, LP* (2011) 202 Cal.App.4th 35, 41 & fn. 1 [failure to challenge trial court rulings on appeal "forfeit[s] any contentions of error regarding them"]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 [contentions waived when there is failure to support them with reasoned argument and citations to authority].)

**DISPOSITION**

The judgment is affirmed.  David is entitled to his costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J. *

FERNS

We concur:



_____, P. J.

BOREN


_____, J.

ASHMANN-GERST

_____

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.